IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

GREGORY BROWN,                    §
                                  §
        Plaintiff,                §
                                  §
VS.                               §   NO. 4:04-CV-871-A
                                  §
TONY SIMMONS, ET AL.,             §
                                  §
        Defendants.               §

MEMORANDUM OPINION
and
ORDER

        Came on for consideration the motion of defendant Tony

Simmons ("Simmons") for summary judgment based on qualified

immunity.[1]  The court, having considered the motion, the response

of plaintiff, Gregory Brown, the record, the summary judgment

evidence, and applicable authorities, finds that the motion

should be granted.  The court further finds that because

plaintiff's claims against defendant Trophy Club, Texas, ("Trophy

Club") are contingent on the existence of a violation of

plaintiff's constitutional rights by Simmons, judgment in favor

of Trophy Club would also be appropriate.  The court is,

nevertheless, giving plaintiff an opportunity to respond before

making such a ruling.

---

[1]The court notes that plaintiff's claims are asserted against
"Tony Simmons, in his official capacity," Pl.'s Original Pet. at 1,
and that no claims are asserted against Simmons individually.
Nevertheless, because the parties have treated the petition as
asserting individual-capacity claims, the court is proceeding as
though such claims had been properly asserted.

I.

### Plaintiff's Claims

On August 6, 2004, plaintiff filed his original petition in the 153rd Judicial District Court of Tarrant County, Texas. The action was brought before this court by notice of removal filed November 24, 2004.

Plaintiff alleges that Simmons, a police officer employed by Trophy Club violated plaintiff's Fourth Amendment rights by causing plaintiff to be arrested pursuant to an arrest warrant issued without probable cause. Plaintiff further alleges that Trophy Club is liable because Simmons acted as a policymaker; Trophy Club ratified Simmons's acts; and, Trophy Club failed to properly train Simmons. Plaintiff seeks damages and attorney's fees.

II.

### Grounds of the Motion

In a footnote on the first page of his summary judgment motion, Simmons notes that, to the extent he has only been sued in his official capacity, he is entitled to dismissal of all claims against him. Suing a governmental official in his official capacity is merely another way of pleading an action against the official's employer. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Brandon v. Holt, 469 U.S. 464, 471 (1985). Plaintiff apparently agrees, having made no response to this point.

2

Simmons cites two grounds in support of his motion for summary judgment based on qualified immunity.  First, plaintiff cannot establish a violation of a constitutional right with respect to any of Simmons's actions.  And, second, the evidence establishes, as a matter of law, the objective reasonableness of Simmons's conduct.

III.

Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The moving party has the initial burden of showing that there is no genuine issue of material fact.  Anderson, 477 U.S. at 256.  The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).  Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth

3

specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 248, 256. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

The standard for granting a summary judgment is the same as the standard for rendering judgment as a matter of law. Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita, 475 U.S. at 597. See also Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc) (explaining the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict).

IV.

Undisputed Evidence

The following is an overview of evidence pertinent to the motion for summary judgment that is undisputed in the summary judgment record:

4

On July 30, 2002, at approximately 3:45 a.m., the 7-Eleven convenience store in Trophy Club was burglarized. The burglary was videotaped by the store's security cameras. The tape showed two white males entering the store and taking numerous items. Lottery tickets were among the items stolen. Later that day, a lottery ticket worth $500 was redeemed at the Tom Thumb store in Trophy Club, and sixteen other lottery tickets were redeemed at a Kroger grocery store in nearby Southlake, Texas. The tickets redeemed were among those stolen from the 7-Eleven.

On July 31, 2002, Simmons and another Trophy Club officer met with a Texas Lottery Commission investigator regarding the stolen lottery tickets. The investigator had traced the tickets cashed at the Tom Thumb and Kroger to the burglary. Later that day, Simmons interviewed Roxanne Davies, the Tom Thumb cash office assistant who was on duty at the time the lottery ticket was redeemed at the Tom Thumb in Trophy Club. Ms. Davies told Simmons that she saw five young white males enter the store; that two of them went to the photo area of the store to cash a lottery ticket; that due to the large amount to be paid, they were directed to the cash office; and, that one of them, who appeared to be seventeen to nineteen years of age and thinly built, approached her window to cash the ticket. Simmons then interviewed Kathryn Cyr, the photo area clerk who was working at the Tom Thumb at the time. Ms. Cyr described two individuals who approached her about cashing a lottery ticket. She described the individual who tried to cash the lottery ticket with her as

5

skinny, dressed preppy, wearing shorts or baggy pants, nice-
looking, and about age nineteen.  Ms. Cyr stated that the
individual had defined features, with notable cheekbones and
short hair.

On July 31, 2002, Simmons also interviewed Susan Stringer,
the manager of the Kroger store in Southlake, where sixteen of
the stolen lottery tickets were redeemed.  Simmons learned that
at 1:49 p.m. a white male in a white T-shirt, baggy pants, and a
baseball cap drove a dark-colored sports car, which looked like a
Ford Mustang, into the Kroger parking lot.  The white male driver
looked to be between the ages of seventeen and twenty.  Simmons
was able to watch security camera videotape footage at that time.
The Kroger manager would not allow Simmons to take the videotape,
but he was permitted to take photographs of the screen on which
the footage was playing.

On August 2, 2004, Simmons reviewed videotape evidence he
had gathered regarding the stolen lottery tickets, including the
videotape footage taken at the Tom Thumb.  While he was reviewing
the evidence, David Jackson walked by.  Jackson, who was nineteen
years old,[2] had recently graduated from Northwest High School.
Jackson was the Lieutenant of Learning for Life Law Enforcement
Explorer Post No. 957.  Jackson had passed a criminal background
check before being accepted into the Explorer program and his

_____

[2]Although the parties refer to Jackson as an eighteen-year-old,
his affidavit shows that he was nineteen, having been born on June 6,
1983, and the affidavit given on August 2, 2002.

character and reputation had been checked through resource officers at the local high school. Simmons had known and worked with Jackson through the Explorers since 2001. Simmons was of the opinion that Jackson was a trustworthy, reliable individual. Jackson was frequently at the police department because of his activities as an Explorer.

Jackson reviewed the videotape from the Tom Thumb security camera with Simmons. Jackson told Simmons that he recognized the person who appeared on the videotape redeeming the stolen lottery ticket as plaintiff. Jackson said that they had gone to high school together. Jackson also recognized some of the others who had been at the Tom Thumb store. Jackson showed Simmons a picture of plaintiff in the Northwest High School annual. Simmons took a sworn statement from Jackson relating these facts.

Simmons made a photocopy of the annual page including plaintiff's photograph. He showed the photograph to Cyr, who identified plaintiff as the individual who had attempted to cash the stolen lottery ticket. She wrote next to the photograph, "This is the guy that gave me the $500 ticket." Simmons's App. at 22. Next, Simmons went to Trophy Club police records and discovered that plaintiff had been issued a citation while operating a 2000 black Ford Mustang automobile. The vehicle was similar to the one driven to the Kroger store.

Based on his training and experience as a police officer, Simmons was satisfied that the two identifications and matching the type and color of car were sufficient to establish probable

cause to seek an arrest warrant.  Simmons drafted an affidavit in support of a warrant for plaintiff's arrest for the offense of claiming a lottery prize by fraud.  He presented the affidavit to Magistrate Eric Ranslben on August 6, 2002, and the arrest warrant was issued.  In Simmons's experience with Magistrate Ranslben, Magistrate Ranslben had always been very strict in requiring sufficient probable cause for an arrest warrant.

Simmons informed officers at the University of Texas at Arlington police department that he had a warrant for the arrest of plaintiff.  On August 7, 2002, campus police called plaintiff out of his government class and arrested him.  Simmons did not give any instructions to the campus police officers as to how the arrest should be accomplished.  At the time of plaintiff's arrest, campus police officers did not allow outside police officers to conduct on-campus arrests.  After plaintiff was arrested, Simmons put leg irons on him and transported him to Trophy Club.

Plaintiff was accused by Simmons of burglarizing the 7-Eleven and attempting to cash a stolen lottery ticket.  Simmons told plaintiff that he had been caught on videotape committing the crimes and that he should confess to them.  When Simmons showed plaintiff some of the security camera video footage, plaintiff admitted that he could understand how someone could believe that he was the individual on the videotape.  Plaintiff himself identified another individual in the security camera videotape footage.  The person plaintiff identified was not the

8

individual on the videotape, but was able to identify the actual guilty party.  Plaintiff was released on bond on August 7, 2002, and all charges against him were dropped the following week.

V.

Analysis

A.   Law Pertinent to the Motion.

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  For a right to be "clearly established," the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Individual liability thus turns on the objective legal reasonableness of the defendant's actions assessed in light of clearly established law at the time.  Hunter v. Bryant, 502 U.S. 224, 228 (1991); Anderson, 483 U.S. at 639-40.  In Harlow, the court explained that a key question is "whether that law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful. . . ." 457 U.S. at 818.  If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the

9

defendant is entitled to qualified immunity.  <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986); <u>Fraire v. City of Arlington</u>, 957 F.2d 1268, 1273 (5th Cir.), <u>cert. denied</u>, 506 U.S. 973 (1992). As the Fifth Circuit has noted, "[f]or qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*." <u>Sorenson v. Ferrie</u>, 134 F.3d 325, 330 (5th Cir. 1998) (citations omitted).

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable.  <u>Siegert v. Gilley</u>, 500 U.S. 226, 231 (1991); <u>Duckett v. City of Cedar Park</u>, 950 F.2d 272, 276-80 (5th Cir. 1992).  In so doing, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. <u>Siegert</u>, 500 U.S. at 232.  Rather, the court must be certain that, if the facts alleged by plaintiff are true, a violation has clearly occurred.  <u>Connelly v. Comptroller</u>, 876 F.2d 1209, 1212 (5th Cir. 1989).  A mistake in judgment does not cause the municipal employee to lose his qualified immunity defense.  In <u>Hunter</u>, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law."

Malley [475 U.S.] at 343.  This accommodation for
reasonable error exists because "officials should not
err always on the side of caution" because they fear
being sued.  Davis [v. Scherer, 468 U.S. 183, 196
(1984)].

502 U.S. at 229.

The Fourth Amendment does not guarantee that only the guilty

will be arrested.  Baker v. McCollan, 443 U.S. 137, 145 (1979).

Nor does the Constitution require error-free investigation.

Patterson v. Armatys, 808 F. Supp. 550, 552 (E.D. Tex. 1992).  A

plaintiff has no cause of action for negligent conduct of

investigating officers.  Id.

B.   Whether Simmons is Entitled to Qualified Immunity.

The first issue is whether plaintiff has alleged any

violation of a clearly established right.  Siegert, 500 U.S. at

232.  Plaintiff alleges that he was arrested based on an invalid

warrant obtained without probable cause.  If that were the case,

plaintiff would have stated a claim.  However, whether

plaintiff's arrest was illegal hinges on the absence of probable

cause.  If plaintiff cannot show that Simmons lacked probable

cause, he has failed to state the violation of a constitutional

right, and Simmons is entitled to qualified immunity.  Sorenson,

134 F.3d at 328.

The court considers the totality of the facts and

circumstances within Simmons's knowledge at the time he obtained

the warrant and whether, based on the information Simmons

possessed, a reasonable person could come to the same objective

conclusion, that is, that probable cause existed for the issuance

11

of a warrant.  Ohio v. Robinette, 519 U.S. 33, 38-39 (1996).
Here, the summary judgment evidence establishes that Simmons
relied upon the statements of two people who identified plaintiff
as the person who cashed one of the stolen lottery tickets.
Simmons had worked with one of those persons, Jackson, and
believed him to be trustworthy and reliable.  The other, Cyr, was
an eye-witness to the cashing of the lottery ticket.  Neither
expressed any doubt about the identification of plaintiff.
Although plaintiff is not happy that the sequence of events that
set in motion his arrest was initiated by a former classmate, a
person his age, he has not shown that no reasonable officer would
have believed that probable cause existed.  See Babb v. Dorman,
33 F.3d 472, 477 (5th Cir. 1994).

Plaintiff focuses on allegedly omitted facts in attacking
the warrant affidavit.  There is no evidence, however, that
Simmons made material misstatements or misrepresented any of the
facts critical to a finding of probable cause.  See Morin v.
Caire, 77 F.3d 116 (5th Cir. 1996).  The record reflects that,
although it mentioned the crime of burglary, the arrest warrant
was issued for the crime of claiming a lottery prize by fraud.
Clearly, probable cause existed for the issuance of that warrant.
That plaintiff was also charged with burglary of a building, or
that a second warrant may have been issued for that crime,[3] a

_____

[3]The summary judgment evidence alludes to the existence of a
second warrant, Simmons's App. at 28, but a copy of such warrant has
not been produced.  Surely, if one existed, plaintiff would have
(continued...)

crime for which probable cause may not have existed for his
arrest separate and apart from the evidence linking him to the
related lottery ticket cashing, does not have any bearing on the
propriety of plaintiff's arrest.  That is, there was one arrest
and there is no evidence that plaintiff suffered any additional
penalty as a result of having been charged with the commission of
two crimes rather than one, where a reasonable officer would have
believed that probable cause existed as to at least one of them.

As the Supreme Court has noted, it is inevitable that law
enforcement officials will in some cases reasonably but
mistakenly conclude that probable cause is present and, in such
cases, they should not be held personally liable.  <u>Anderson</u>, 483
U.S. at 641.  Plaintiff has not shown that this is anything more
than one of those cases.  Plaintiff admitted that he understood
how he could have been identified as the person claiming the
lottery prize.  Plaintiff himself misidentified one of the other
participants.  There was nothing malicious or reckless or
unlawful about his doing so or about Simmons's reliance on the
persons who identified plaintiff as the perpetrator.

C.    <u>Plaintiff's Claims Against Trophy Club (Including
      Official Capacity Claims Against Simmons)</u>.

With regard to Trophy Club, plaintiff alleges:

> Defendant Trophy Club is also liable to
> [plaintiff] for the actions that led to his wrongful
> arrest without probable cause because the acts of
> Officer Simmons, acting as a policymaker, were

---

[3](...continued)
produced a copy of it.

tantamount to a policy decision of the municipality in
determining the manner that the investigation of claims
would be conducted, the minimum amount of evidence
needed for application for an arrest warrant, and the
information that should be placed in an affidavit
seeking such a warrant.  In addition, and on
information and belief, Defendant Trophy Club is liable
for Officer Simmons' deprivation of [plaintiff's]
rights by ratifying or acquiescing to Officer Simmon's
[sic] violations of [plaintiff's] constitutional and
common law rights by failing to reprimand, discipline
or discharge Officer Simmons for his actions.  Finally,
Trophy Club is liable for Officer Simmons' action since
it failed to properly train Officer Simmons in proper
investigatory techniques as evidenced by the techniques
used in [plaintiff's] case.

Pl.'s Original Pet. at 5-6, ¶ 19.

With regard to the liability of Trophy Club, the law is

clearly established that the doctrine of respondeat superior does

not apply to § 1983 actions.  Monell v. New York City Dep't of

Soc. Servs., 436 U.S. 658, 691 (1978); Williams v. Luna, 909 F.2d

121, 123 (5th Cir. 1990).  Neither a supervisory official nor a

governmental entity can be held liable for failing to adopt

policies to prevent constitutional violations.  See, e.g., Vela

v. White, 703 F.2d 147, 153 (5th Cir. 1983); Reimer v. Smith, 663

F.2d 1316, 1323 (5th Cir. 1981); Wanger v. Bonner, 621 F.2d 675,

680 (5th Cir. 1980).  Moreover, a plaintiff must allege more than

an isolated incident of purported harm to establish a claim

against such person or entity.  Fraire, 957 F.2d at 1278;

McConney v. City of Houston, 863 F.2d 1180, 1184 (5th Cir. 1989);

Lanquirand v. Hayden, 717 F.2d 220, 227-28 (5th Cir. 1983).

Without a pattern or practice of recurring constitutional

violations, neither negligence nor gross negligence suffices as a

basis for liability.  <u>Stokes v. Bullins</u>, 844 F.2d 269, 274 (5th Cir. 1988).  There must be a link between the policy and the particular constitutional violation alleged.  <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823 (1985).  And, where a defendant establishes as a matter of law that no constitutional deprivation occurred, it does not matter that a policy would have authorized the conduct about which the plaintiff complains.  <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986); <u>Riggs v. City of Pearland</u>, 177 F.R.D. 395, 408 (S.D. Tex. 19997).

Here, Simmons has established as a matter of law that no constitutional deprivation occurred.  Hence, there is no basis for liability on the part of Trophy Club and no purpose would be served by allowing plaintiff to proceed with claims against it.  Plaintiff had notice that he must come forward with evidence to raise a genuine fact issue as to the alleged constitutional violation.  Because he did not meet his burden, entry of judgment on behalf of Trophy Club is appropriate.  <u>See</u> <u>Celotex</u>, 477 U.S. at 326.  However, the court will give plaintiff an opportunity to show why he should be allowed to proceed with his claims against Trophy Club.

VI.

<u>Order</u>

For the reasons discussed herein,

The court ORDERS that Simmons's motion for summary judgment be, and is hereby, granted; that plaintiff take nothing on his

claims against Simmons; and, that such claims be, and are hereby, dismissed with prejudice.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the disposition of plaintiff's claims against Simmons.

The court further ORDERS that by 4:00 p.m. on May 25, 2005, plaintiff show cause why his claims against Trophy Club should not be dismissed with prejudice.

SIGNED May _____, 2005.

___/s/ John McBryde_____
JOHN McBRYDE
United States District Judge

16